UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOTTSDALE INSURANCE COMPANY,
as successor in interest to
WESTERN HERITAGE INSURANCE COMPANY,

          Plaintiff,

v.                              Case No.: 2:19-cv-00113-JES-MRM

CHARLES DYLAN KUNTZ,

          Defendant.
_____

## OPINION AND ORDER

This matter comes before the Court on the parties' cross Motions for Summary Judgment (Docs. ##22, 25) and supporting materials (Docs. ##23, 24) filed on January 3, 2020. The parties filed responses in opposition to each other's motions (Docs. ##27, 28) on January 17, 2020. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment is granted, and Defendant's Motion for Summary judgment is denied.

**I.**

On or about February 28, 2017, Charles Dylan Kuntz (defendant or Kuntz) filed a negligence action against Whalen Auto Group, LLC (the insured or Whalen Auto)(Doc. #1-2.), styled <u>Charles Dylan Kuntz v. Whalen Auto Group, LLC dba Whalen Power Sports</u>, Case No. 08-2017-CA-000186, in the Circuit Court of the Twentieth Judicial Circuit in and for Charlotte County, Florida (the Negligence

Action).  Kuntz sought to recover damages for bodily injuries he sustained in an accident on December 10, 2016, involving an All-Terrain Vehicle (ATV) owned by Whalen Auto and driven by its employee. (Id., pp. 1-2.)

On August 17, 2018, Whalen Auto tendered the Negligence Action to Scottdale Insurance Company's (Plaintiff or Scottsdale) predecessor-in-interest for defense and indemnity.[1] (Doc. #1, ¶¶ 11, 12.)  Kuntz, Whalen Auto, and Scottsdale resolved the Negligence Action pursuant to a written settlement agreement.  The settlement agreement required Scottsdale to institute a declaratory judgment action to determine the rights and obligations, if any, of the parties arising from the insurance Policy, and to pay Kuntz $150,000.00 should Kuntz prevail in the declaratory action. (Id., ¶¶ 3, 13-14.)  On February 25, 2019, as required by the settlement agreement, Scottsdale filed its Complaint with this Court seeking a declaration as to whether there is coverage under the provisions of the Commercial Garage Coverage insurance policy (the Policy). (Doc. #1, ¶¶ 6-7, 15; Doc. #1-1, pp. 43, 49.)

---

[1] Whalen's insurer was Western Heritage Insurance Company (Western Heritage), which is no longer operating as a business. On October 1, 2018, Scottsdale became the successor-in-interest to the policy originally underwritten by Western Heritage and is the proper party in interest. (Doc. #1, ¶ 3; Doc. #22-6, p. 9.) For simplicity, Scottsdale will be identified as the insurer herein.

2

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir.

1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

### III.

Under Florida law, the interpretation of an insurance policy is a pure question of law to be decided at the summary judgment stage.[2] Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar., Co., 157 F.3d 843, 844 (11th Cir. 1998); Coleman v. Fla. Ins. Guar. Ass'n, Inc., 517 So. 2d 686, 690 (Fla. 1988). Terms utilized in an insurance policy should be given their plain and unambiguous meaning as understood by the "[person] on the street." State Farm Fire & Cas. Co. v. Castillo, 829 So. 2d 242, 244 (Fla. 3rd DCA

---

[2] In a diversity action such as this, state substantive law controls. Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC, 601 F.3d 1143, 1148 (11th Cir. 2010). The parties agree that the Policy was issued and delivered to Whalen in Florida, and that the events giving rise to this action occurred in the Florida. (Doc. #22-6, p. 37.) Therefore, Florida law applies in determining the parties' rights and liabilities under the Policy. See State Farm Mut. Auto Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006); Stureiano v. Brooks, 523 So. 2d 1126 (Fla. 1988); Lumbermens Mut. Cas. Co. v. August, 530 So. 2d 293 (Fla. 1988).

2002). See also Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003). The Florida Supreme Court has consistently held that "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). See also Wash. Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013). Courts may not "rewrite, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties" when interpreting an insurance policy. Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1138 (Fla. 1998)(citations omitted). Where "a policy provision is clear and unambiguous, it should be enforced according to its terms." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005).

On the other hand, if relevant policy language is "susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." Swire, 845 So. 2d at 165 (quoting Anderson, 756 So. 2d at 34). An ambiguous provision is construed in favor of the insured and strictly against the drafter. Anderson, 756 So. 2d at 34. This rule is tempered, however, by the principle that even insurance policies must be given "practical, sensible interpretations in accordance with the natural meaning of the words

5

employed." Simmons v. Provident Mut. Life Ins. Co., 496 So. 2d 243 (Fla. 3rd DCA 1986). See also State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So. 2d 1245, 1248 (Fla. 1986).

Failure to provide a definition for a term involving coverage does not necessarily render the term ambiguous. Deni, 711 So. 2d at 1138. See also State Farm Mut. Auto. Ins. Co. v. Smith, 198 So. 3d 852, 857 (Fla. 2d DCA 2016); Swire, 845 So. 2d at 166. "When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning." Deutsch v. Geico Gen. Ins. Co., 284 So. 3d 1074, 1076 (Fla. 4th DCA 2019)(quoting Botee v. S. Fid. Ins. Co., 162 So. 3d 183, 186 (Fla. 5th DCA 2015)). Nevertheless, if an insurer fails to define a policy term, the insurer cannot assert that there should be a "narrow, restrictive interpretation of the coverage provided." CTC Dev. Corp., 720 So. 2d at 1076 (quoting State Comprehensive Health Ass'n v. Carmichael, 706 So. 2d 319, 320 (Fla. 4th DCA 1997)).

**IV.**

The undisputed material facts are as follows: On a signed application (the Application) for an insurance policy, Whalen Auto's representative Esther Whalen described its business operations as buying, selling and servicing motorcycles, and selling protective gear, cleaning supplies, tires and motor oil. (Doc. #25-4, p. 1.) The Application also stated that 98% of Whalen

6

Auto's business consisted of sales and repairs of motorcycles, while 2% of its operations were sales and repairs of "Dirt Bikes or ATVs/UTVs and all other recreational autos." (Id., p. 4.)

Western Heritage, acting through its managing general agent Hull & Company (Hull), issued a commercial garage coverage policy, Policy Number AGP0860853, to Whalen Auto (the Policy). (Docs. #1-1; #22-18, p. 7; #22-6, p. 21.) The Policy consisted of forms and endorsements set forth in a Schedule of Forms and Endorsements, mainly organized into three categories: (1) Common Forms; (2) Garage Forms; and (3) State Forms. (Doc. #22-1, p. 6.)

On December 10, 2016, Charles Dylan Kuntz (defendant or Kuntz) sustained bodily injuries while riding as a passenger on a "Stampede Bad Boy," a four-wheel ATV owned by Whalen Auto and driven by its employee Brett DeGrasse (DeGrasse). (Doc. #27-1, pp. 13-17.) The ATV was not licensed nor equipped for use on Florida roads or highways. (Doc. #22-16, p. 15.) DeGrasse was driving from Whalen Auto's service facility to its showroom area when the ATV flipped over, injuring Defendant. (Id., pp. 11, 14-17.) At the time of the accident, DeGrasse was twenty years old. (Doc. #23; Doc. #25-4, p. 3; Doc. #25-3). DeGrasse is not identified in the Policy as a driver of a covered "auto" nor named as an authorized driver in the Schedule of Youthful Drivers. (Doc. #1-1, pp. 43-44, 49.) Defendant Kuntz was not employed by Whalen Auto, nor was he test driving the ATV as a prospective purchaser. (Doc. #27-1,

7

p. 25.) Additional facts will be set forth as necessary to discuss certain issues.

## V.

Plaintiff Scottsdale asserts that the damages sought by Kuntz are not covered by the Policy because the claim falls within the Youthful Driver Exclusion (the Exclusion) of the Policy, or the Policy's Covered Driver(s) or Operator(s) Limitation (the Limitation), or both. Defendant responds that the Policy neither excludes coverage nor precludes the damages he may recover, and seeks a declaratory judgment to that effect. As defendant succinctly states, "the only issue for this Court to decide is whether the Youthful Driver Exclusion, or the Covered Driver Limitation, operates to preclude coverage." (Doc. #22, p. 2.)

### A. Coverage:  The Youthful Driver Exclusion

Liability coverage under the Policy turns on the question of whether the Youthful Driver Exclusion applies, which in turn depends on whether the ATV is a covered "auto" within the meaning of the Policy. If the ATV is a covered "auto", the Youthful Driver Exclusion would preclude liability coverage for all of Defendant's damages in the underlying Negligence Action. Scottsdale argues that the ATV is a covered "auto," while defendant argues that it is not such an "auto."

**(1)  Relevant Policy Provisions**

The Policy states in relevant part:

8

**YOUTHFUL DRIVER EXCLUSION – DEALERS ONLY**

> We will not pay for "bodily injury," "property damage" or "loss" while anyone under the age of twenty-one (21) is operating a covered "auto" at any time. This exclusion does not apply to the persons named in the Schedule of Youthful Drivers or to a prospective purchaser while on a test drive accompanied by you or your "employee."

(Doc. #1-1, p. 43.)  As noted earlier, it is undisputed that at the time of the accident DeGrasse was under twenty-one years of age and was not named in the Schedule of Youthful Drivers, and that Kuntz was not a prospective purchaser on a test drive.  Thus, the only disputed issue is whether the ATV involved in the accident was a covered "auto" within the meaning of the Youthful Driver Exclusion provision of the Policy.

The Policy's Garage Coverage Form explains that words or phrases in quotation marks have "special meaning," and directs the reader to "Section VI – Definitions" to determine the meaning of such words and phrases. (Id., p. 15.)  Pursuant to Section VI's definitions, "auto" is defined as "a land motor vehicle, 'trailer' or semitrailer." (Id., p. 29.)  It is undisputed that the ATV is neither a trailer nor a semitrailer.  The Policy does not further define land motor vehicle, and the phrase is not in quotation marks in the Policy, indicating that it is not given any special meaning in the Policy. (Doc. #1-1, pp. 1-56.)

The Garage Coverage Form also assigns numeric symbols which describe various categories of "autos."  The numeric symbols are

9

placed on the Policy Declaration to designate those categories of autos which are covered by the Policy. (Id., p. 11.) Here, the only relevant "autos" were those satisfying symbol 22 ("autos" owned by the insured) or symbol 29 ("autos" not owned by the insured but used in connection with its garage business). (Id., pp. 11, 15.)

**(2) Meaning of Land Motor Vehicle**

Scottsdale asserts that the ATV is a land motor vehicle, and hence an "auto" to which the Youthful Driver Exclusion applies, barring coverage. Defendant responds that the ATV is not a land motor vehicle within the meaning of the Policy, and thus the Youthful Driver Exclusion does not apply, and liability coverage is not barred.

**(a) Plain And Non-Technical Meaning**

Since the term land motor vehicle is undefined in the Policy, the Court first considers whether the plain and non-technical meaning of land motor vehicle as understood by the "[person] on the street" would include the ATV at issue in this case. Castillo, 829 So. 2d at 244; Deutsch, 284 So. 3d at 1076 (suggesting that courts may look to non-legal dictionary definitions to determine the plain and ordinary meaning of words). After doing so, the Court finds that the term land motor vehicle has an ordinary, plain meaning that does encompass a motorized vehicle intended for land use, including the ATV in this case.

The dictionary defines "land" as "the solid part of the surface of the earth." Merriam-Webster Dictionary, Land, https://www.merriam-webster.com/dictionary/land (last visited Dec. 3, 2020). It is undisputed that the ATV in this case satisfied the "land" portion of the term in the Policy.

Motor is defined as "any of various power units that develop energy or impart motion: such as a small compact engine or an internal combustion engine, especially a gasoline engine."[3] Merriam-Webster Dictionary, Motor, https://www.merriam-webster.com/dictionary/motor (last visited Dec. 3, 2020). Vehicle is defined as "a means of carrying or transporting something – planes, trains, and other *vehicles*: such as a) motor vehicle; b) a piece of mechanized equipment." Merriam-Webster Dictionary, Vehicle, https://www.merriam-webster.com/dictionary/vehicle (last visited Dec. 3, 2020). An ATV is generally defined as "a small motor vehicle with three or four wheels that is designed for use on various types of terrain." Merriam-Webster Dictionary, All-Terrain Vehicle, https://www.merriam-webster.com/dictionary/all-terrain%20vehicle (last visited Dec. 3, 2020).

---

[3] Motor is also defined as "one that imparts motion specifically: Prime Mover," and "motor vehicle especially: automobile." https://www.merriam-webster.com/dictionary/motor (last visited Dec. 3, 2020).

11

Considering the non-technical definition of land motor vehicle, it is apparent that the ATV in this case is such a vehicle. The ATV carries or transports something over the solid part of the surface of the earth while being powered by a gasoline engine that imparts motion. Accordingly, the ordinary, non-technical definition of land motor vehicle includes the ATV at issue in this case. See Montgomery v. Progressive Advanced Ins. Co., No. 2:14cv231, 2015 U.S. Dist. LEXIS 27820, at *16 (E.D. Va. Mar. 6, 2015)(unpub.)(holding that an ATV falls within the normal and customary meaning of the term "land motor vehicle."); Paskiewicz v. Am. Fam. Mut. Ins. Co., 2013 WI App 92, ¶13, 349 Wis. 2d 515, 522, 834 N.W.2d 866, 869 (applying common definition of "motor vehicle," an ATV was a "land motor vehicle" under the terms of an insurance policy that did not otherwise define the term "motor vehicle."); Porter v. Buck, No. 7:14CV00176, 2015 U.S. Dist. LEXIS 21815, at *13-14 (W.D. Va. Feb. 24, 2015) (unpub.) (holding that an ATV is a "motor vehicle" under the common definition of "motor vehicle.").

**(b)   PIP Endorsement Definition of "Motor Vehicle"**

Defendant argues, however, that the Court must import the special meaning given to the definition of "motor vehicle" set forth in the Personal Injury Protection (No-Fault) Endorsement (the PIP Endorsement) of the Policy into the Youthful Driver Exclusion of the Policy.  Under this PIP definition, defendant

12

argues, a "motor vehicle" does not include the ATV because the ATV was not licensed for use on public roads. Therefore, defendant argues, the Youthful Driver Exclusion does not apply, and the Policy does provide coverage.

Defendant is correct that the Court must consider the language of the Policy as a whole, including the PIP Endorsement. The Court finds, however, that the PIP Endorsement's definition of "motor vehicle" is not applicable to the meaning of land motor vehicle as used in the Youthful Driver Exclusion.

Since 1971, Florida law has required that an insurer issuing policies in Florida include provisions which comply with the Florida no fault statutes, which include providing personal injury protection (PIP). Fla. Stat. §§ 627.730-.7405. Since different states have different PIP requirements, an insurer typically complies with an individual state's law by including an endorsement to its normal policy. The PIP Endorsement makes clear that its purpose is to address PIP benefits "in accordance with the Florida Motor Vehicle No-Fault Law" for bodily injuries arising out of "motor vehicle" accidents. (Doc. #1-1, pp. 53, 55.)

The PIP Endorsement in this Policy declares in large capital letters that it "CHANGES THE POLICY" and that it modifies the "Garage Coverage Form." (Doc. #1-1, p. 52.) Specifically, the PIP Endorsement states that "with respect to coverage provided by this endorsement, *the provisions of the Coverage Form apply unless*

13

*modified* by the endorsement." (Id.) (emphasis added). In relevant part the PIP Endorsement provides:

> We will pay Personal Injury Protection benefits in accordance with the Florida Motor Vehicle No Fault Law to or for an "insured" who sustains "bodily injury" in an "accident" arising out of ownership, maintenance or use of a "motor vehicle."

(Id., p. 53.)  Like the Garage Coverage Form, the PIP Endorsement provides that words and phrases in quotation marks have special meanings "as used in *this* endorsement." (Id., p. 56.) (emphasis added).  The PIP Endorsement defines "motor vehicle" as "any self-propelled vehicle with four or more wheels which is of a type both described and required to be licensed for use on the highways of Florida . . .." (Id.)

It is clear on the face of the Policy that the PIP Endorsement changes the Policy and modifies the Garage Coverage Form in some regard, i.e., to the extent necessary to comply with the Florida law requirements.  The Court concludes, however, that the PIP Endorsement special definition of "motor vehicle" does not change, nor was it intended to change, the plain meaning of "land motor vehicle" as used in the Exclusion in the Garage Coverage Form. The PIP Endorsement states that "with respect to coverage provided by this endorsement" the normal "provisions of the Coverage Form apply unless modified by the endorsement."  (Doc. #1-1, p. 52.)  The PIP Endorsement also unambiguously states that its definitions are "as

14

used in *this* endorsement." (Id., p. 56.) (emphasis added). The clear intent is that meaning of the PIP Endorsement's definitions, including "motor vehicle," are limited to the PIP provisions, and do not apply to or supersede the definitions contained in Section VI of the Policy. Looking at the Policy as a whole, the Court finds that the term "motor vehicle" as used in the PIP Endorsement is not applicable to determining whether an ATV is a land motor vehicle. See Grant v. State Farm Fire & Cas. Co., 638 So. 2d 936, 938 (Fla. 1994)(finding that the definition of "motor vehicle" under the No-Fault section of a policy was not applicable to exclusions discussed in the Uninsured Motor Vehicle section of the policy.)

Defendant's reliance on Pasteur Health Plan, Inc. v. Salazar, 658 So. 2d 543 (Fla. 3d DCA 1995), rev. denied, 666 So. 2d 901 (Fla. 1996), is misplaced. Here, unlike the Salazar case, there is evidence within the four corners of the insurance contract between Scottsdale and Whalen that the parties did not intend "land motor vehicle" to be defined by Florida Statutes.

In conclusion, the Court finds that the plain and non-technical meaning of "land motor vehicle" in the Garage Coverage Form of the Policy includes liability coverage for ATVs. Therefore, the Youthful Driver Exclusion precludes Defendant from recovering any and all damages in the instant case.

### B. Covered Driver(s) or Operator(s) Limitation

Plaintiff Scottsdale also contends the Policy's Covered Driver(s) or Operator(s) Limitation (the Limitation) expressly excludes liability for the damages sought by Defendant. The Limitation precludes liability coverage arising out of the ownership, maintenance or use of any covered "auto" unless the person driving the "auto" is named in the Schedule of Covered Driver(s) or Operator(s) (the Schedule). (Doc. #1-1, p. 49; Doc. #22-2, p. 23.) Plaintiff asserts that the Limitation bars recovery because DeGrasse was not listed on the Schedule in Whalen Auto's signed Application for insurance coverage or in the Policy. (Doc. #25, p. 12; Doc. #25-4, pp. 3-4.) It is undisputed that the only owners, employees, and drivers/contract drivers listed in the Application as having access to covered autos (except customers) were Jared Whalen, Esther Whalen, John Whalen, and Kyle Sutton. (Id.) DeGrasse was not listed on the Schedule in Whalen Auto's signed application for insurance coverage or in the Policy. (Id.)

Defendant responds that the express terms of the Covered Driver(s) or Operator(s) Limitation are not binding because the Limitation was not signed by the insured, as mandated in the Limitation itself. (Doc. #22, p. 11.) Defendant asserts that the certified copy of the Policy bears no signature from the insured or an "Authorized Representative," while a second version contains

16

the forged signatures of Esther Whalen and Scott Sims. (Id., p. 13.)

There are issues of material disputed facts which preclude resolution of the Limitation in a motion for summary judgment. The certified copy of the Policy contains a Limitation without any signature by defendant, which would render the Limitation inoperative. (Doc. #22-2, p. 23.) There is a second version which contains the purported signature of the insured's representative, but the authenticity of that signature is disputed. (Doc. #1-1, p. 49.) The facts do not establish who placed the signature on the second version of the Limitation, or that the person was an agent of the insured. Under these circumstances, the Court cannot determine that the insured must assume the risk of an unauthorized signature. See e.g., Empire Fire & Marine Ins. Co. v. Koven, 402 So. 2d 1352 (Fla. 4th DCA 1981); Gazie v. Ill. Emps. Ins., Inc., 583 So. 2d 1098 (Fla. 4th DCA 1991)(finding that the insureds were bound by their insurance agent's actions when he forged the insured's signatures on a form rejecting uninsured motorist coverage).

Accordingly, it is now

    **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. #25) is **GRANTED**.

2. Defendants Charles Dylan Kuntz's Motion for Summary Judgment (Doc. #22) is **DENIED**.

3. It is hereby declared that the Policy Number AGP0860853 provided by Scottsdale Insurance Company, as successor in interest to Western Heritage Insurance Company, does not provide coverage for the claims asserted in <u>Charles Dylan Kuntz v. Whalen Auto Group, LLC dba Whalen Power Sports</u>, Case No. 08-2017-CA-000186.

4. Judgment is entered in favor of Scottsdale Insurance Company, as successor in interest to Western Heritage Insurance Company, and against Charles Dylan Kuntz.

5. It is hereby ordered that the Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file.

    **DONE AND ORDERED** at Fort Myers, Florida, this  3rd  day of December 2020.

                                                  JOHN E. STEELE
                                                  SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record